# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JENNIFER L. HOROS,

      Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:21-cv-01803

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Jennifer L. Horos, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On October 28, 2019, Horos protectively filed a claim for disability insurance benefits and supplemental security income, asserting a disability onset date of August 31, 2018. Her claim was initially denied

by state agency reviewers on December 24, 2019, and upon reconsideration on October 23, 2020. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on April 6, 2021, before an administrative law judge, Mike Oleyar (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Patricia Chilleri. The plaintiff was represented by counsel at the hearing.

On June 16, 2021, the ALJ denied Horos' application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Horos was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). But, because there was medical evidence that Horos suffered from drug addiction or alcoholism ("DAA"), the ALJ was also required to make an additional determination of whether her DAA was a contributing factor material to the determination that she was disabled— that is, whether she would still be disabled if she stopped abusing drugs or alcohol. *See generally* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)

(providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"); 20 C.F.R. §§ 404.1535, 416.935 (implementing this statute); Soc. Sec. Ruling 13-2p, 2013 WL 621536 (Feb. 20, 2013) (interpreting this regulation), *amended by* 2013 WL 1221979 (Mar. 22, 2013) (correcting typographical errors); *Voorhees v. Colvin*, 215 F. Supp. 3d 358, 389 (M.D. Pa. 2015) (describing the DAA materiality determination evaluation process).

At step one, the ALJ found that Horos had not engaged in substantial gainful activity since her alleged disability onset date—August 31, 2018. At step two, the ALJ found that Horos had the severe impairments of: generalized anxiety disorder; major depressive disorder; substance induced psychotic disorder; schizoaffective disorder; substance addiction disorder (heroin, cocaine and methamphetamine); amphetamine use disorder; obesity; and asthma.

At step three, the ALJ found that, including her substance use disorders, Horos had an impairment or combination of impairments that met listing 12.03 (schizophrenia spectrum and other psychotic disorders)

of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Horos's limitations in four broad functional areas as a result of her mental disorders, finding marked limitations in all four functional areas— (1)understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining the process for using paragraph B criteria to evaluate mental impairments).

The ALJ then re-considered the step three criteria, this time evaluating whether Horos would still be found disabled at step three if she stopped abusing drugs or alcohol. The ALJ found that, if she stopped abusing drugs and alcohol, Horos would not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ once again considered Horos's limitations in four broad functional areas as a result of her mental disorders, assuming cessation of any drug or alcohol abuse, and he found moderate limitations in all

four functional areas.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Horos's residual functional capacity ("RFC") assuming the cessation of any drug or alcohol abuse. *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Horos had the RFC to perform "medium work"[1] as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), with the following non-exertional limitations:

> The claimant can tolerate occasional exposure to atmospheric condition. The claimant is limited to understanding, remembering or applying simple instructions. The claimant is limited to occasional interaction with supervisors, coworkers and the public. The claimant is limited to perform detailed, but uninvolved instructions, generally described as simple routine unskilled work, but not at a production rate pace (assembly line work). The claimant is limited to simple work-related decisions with occasional changes in the work setting.

(Tr. 20).

In making these factual findings regarding Horos's prospective

---

[1] The Social Security regulations define "medium work" as a job that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c) and 416.967(c).

RFC without drug or alcohol abuse, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that, if she stopped abusing drugs or alcohol, Horos was still unable to perform her past relevant work as actually and generally performed.

At step five, the ALJ concluded that, if she stopped abusing drugs or alcohol, Horos was capable of performing other jobs that exist in significant numbers in the national economy. Based on her age, education, work experience, and RFC, the ALJ concluded that Horos would be capable of performing the requirements of representative occupations such as: rod assembler (DOT # 739.687-186), retail stubber (DOT # 222.687-034), or order selector (DOT # 922.687-058).

Based on these findings, the ALJ concluded that DAA was a contributing factor material to the determination of disability because Horos would not be disabled if she stopped abusing drugs or alcohol. Because DAA was a contributing factor material to the determination of disability, the ALJ concluded that Horos was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on September 16, 2021, making the ALJ's June 2021 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on October 22, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

II. **DISCUSSION**

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See*

*generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Horos asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) each of the representative jobs described by the vocational expert and identified by the ALJ as work that Horos could perform that also existed in significant numbers in the national economy, required more than occasional interaction with supervisors or co-workers during an initial training period of up to thirty days, and thus conflicted with her RFC, which limited her to no more than occasional interaction with supervisors or coworkers; and (2) the ALJ's RFC determination failed to incorporate identical and uncontradicted findings by two state agency psychological consultants that Horos was limited to performing "1-2 step tasks," despite the ALJ having expressly found these opinions to be "persuasive."[2]

---

[2] The plaintiff's brief has broken this second issue into two separate arguments—one focused on the ALJ's rejection of a "1-2 step task" limitation in favor of an unsupported "simple tasks" limitation in the plaintiff's RFC, and the second focused on the impact of this error on the
*(continued on next page)*

## A. Interaction During Training

The ALJ adopted an RFC that limited the plaintiff to work that required no more than occasional interaction with supervisors, coworkers, and the public. At the plaintiff's hearing, the vocational expert testified that a hypothetical individual with Horos's age, education, work experience, and RFC could perform three representative jobs that existed in significant numbers in the national economy: (1) rod assembler; (2) retail stubber; and (3) order selector. Each of these jobs is classified in the *Dictionary of Occupational Titles* as unskilled work with an SVP of "2," indicating that each job required up to thirty days of initial training. On cross-examination by the plaintiff's counsel, the vocational expert acknowledged that, during this initial training period, an employee may be subject to *more* than occasional interaction with supervisors and coworkers. Based on that, the plaintiff argues here that her RFC, as determined by the ALJ, precludes her from doing these jobs.

The plaintiff's argument is not well taken. As this court and others have previously found in considering this very same argument, an

---

vocational evidence considered by the ALJ at step five. But the two issues are really just one single error and the prejudice that flows from it. Thus, we address them as a single issue.

interaction level during a probationary training period that briefly exceeds occasional does not preclude an individual limited to only occasional interaction from doing that job. *See Rebecca L. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ____, 2022 WL 3025908, at *12 (D.N.J. July 31, 2022); *see also Drozd v. Kizakaji*, Civil No. 1:21-CV-2063, 2023 WL 122387, at *9–*12 (M.D. Pa. Jan. 6, 2023); *Vargas v. Saul*, Civil No. 1:19-CV-1858, 2020 WL 2468401, at *7–*9 (M.D. Pa. May 13, 2020). Despite a brief initial period of more than occasional interaction, the jobs identified by the vocational expert and ALJ here require no more than occasional interaction in general.

## B. Limitation to "1-2 Step Tasks"

In the agency's initial administrative decision, a state agency psychological consultant, Marci Cloutier, Ph.D., opined that Horos was able to "perform 1-2 step tasks." (Tr. 75, 89.) In the agency's administrative decision on reconsideration, a second state agency psychological consultant, Phyllis Reams Brentzel, Psy.D., likewise opined that Horos was able to "perform 1-2 step tasks" or "to meet the basic mental demands to complete 1-2 step tasks on a sustained basis." (Tr. 107–08, 123–24.). But the ALJ adopted an RFC that limited Horos

to "understanding, remembering or applying simple instructions," to "perform[ing] detailed, but uninvolved instructions, generally described as simple routine unskilled work," and "to simple work related decisions." (Tr. 20.) The plaintiff contends that there is a significant distinction between the "simple" work with "uninvolved instructions" set forth in the RFC and the capability to perform "1-2 step tasks" found in the only two medical opinions to address the plaintiff's mental residual functional capacity in this case.

The distinction highlighted by the plaintiff is indeed significant. In determining whether a claimant is capable of performing work that exists in significant numbers in the national economy, the agency and the courts routinely rely on the *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"), a publication by the U.S. Department of Labor that identifies thousands of jobs by name and describes the skills and other attributes required to perform each. *See* 20 C.F.R. § 416.966(d)(1) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of . . . [the] Dictionary of Occupational Titles, published by the Department of Labor . . . ."); *see also Evans v. Metro. Life Ins. Co.*, 190

Fed. App'x 429, 436 n.7 (6th Cir. 2006) (recognizing that courts may take judicial notice of the *DOT* as well). The *DOT* includes a description of the "general educational development" ("GED") for each of the jobs catalogued therein. "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *DOT* app. C, 1991 WL 688702. The GED scale is composed of three divisions, one of which is relevant here—"Reasoning Development." *See id.* In occupations described as having Reasoning Development Level 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* (emphasis added). Meanwhile, occupations described as having Reasoning Development Level 2 require an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Courts—including this one—have found that a limitation to one- to

two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2. *See Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 560 (8th Cir. 2018); *Henderson v. Colvin*, 643 Fed. App'x 273, 277 (4th Cir. 2016) (per curiam); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015); *Skeens v. Astrue*, 903 F. Supp. 2d 1200, 1210–11 (W.D. Wash. 2012); *Wisziwaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012); *see also Shingler v. Kijakazi*, Civil Action No. 4:20-CV-01344, 2022 WL 273426, at *12 (M.D. Pa. Jan. 28, 2022); *Brown v. Kijakazi*, Civil Action No. 4:20-CV-00836, 2021 WL 4711242, at *7 n.4 (M.D. Pa. Oct. 8, 2021).

Here, at step five, the ALJ found that Horos was capable of performing other jobs that exist in significant numbers in the national economy. Two of the three occupations identified by the ALJ were Reasoning Development Level 2 positions, which a one- or two-step tasks limitation would preclude. *See* DICOT 222.687-034, 1991 WL 672136 ("stubber"); DICOT 922.687-058, 1991 WL 688132 ("laborer, stores," "order picker," "parts picker," "stock selector," or "warehouse worker"). But two of the positions identified—night cleaner and machine feeder—were Reasoning Development Level 1 positions, which are consistent

with a one- or two-step tasks limitation. *See* DICOT 323.687-014, 1991 WL 672783 ("cleaner, housekeeping" or "night cleaner"); DICOT 699.686-010, 1991 WL 678871 ("machine feeder").

The remaining position was a Reasoning Development Level 1 position. *See* DICOT 739.687-186, 1991 WL 680218 ("traverse-rod assembler"). Under the applicable regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in *one or more occupations*) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). Here, based on testimony by the vocational expert, the ALJ found a single occupation with requirements that Horos was able to meet with her vocational qualifications, her physical abilities, and the more limited mental abilities found by the state agency psychological consultants. But, based on testimony by the vocational expert, the ALJ found that only 7,000 such jobs exist nationally. This number of positions, however, is insufficient to establish that this last occupation standing exists in significant numbers in the national economy. *See Leonard v. Heckler*, 582 F. Supp. 389, 391–92 (M.D. Pa. 1983) (finding vocational expert

testimony that 5,000 jobs existed in the national economy was insufficient to establish that work exists in significant numbers); *see also Alvarez v. Berryhill*, Civil Action No. 1:16-CV-00707, 2017 WL 1709400, at \*7–\*8 (M.D. Pa. May 3, 2017) (finding 2,077 jobs insufficient); *cf. Sanchez v. Comm'r of Soc. Sec.*, 705 Fed. App'x 95, 99 (3d Cir. 2017) indicating that 18,000 jobs is sufficient).

As noted above, the two state agency psychological consultants' opinions were the only medical opinions in the record to address the plaintiff's mental RFC. Both found that she was limited to work involving the performance of "1-2-step tasks." In her brief in opposition, the Commissioner notes the other medical and non-medical evidence in the record that the ALJ considered in evaluating Horos's RFC. But this is simply a case of an ALJ improperly supplanting the medical judgment of a medical specialist with the ALJ's own "personal observation and speculation." *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (noting that "an ALJ may not make speculative inferences from medical reports").

"It is by now axiomatic that an ALJ may not substitute his own lay medical opinion for competent medical opinion in the record." *Harris v.*

*Astrue*, 138 Soc. Sec. Rep. Serv. 1020, 2009 WL 189845, at *13 (W.D. Pa. 2009); *see also Slotcavage v. Berryhill*, Civil No. 3:18-CV-1214, 2019 WL 2521634, at *10 (M.D. Pa. June 3, 2019) ("It is axiomatic that an ALJ may not unilaterally reject *all* medical opinions in favor of the ALJ's own subjective impressions."). Furthermore, it is well established that "[s]tate agency physicians and psychologists are considered to be highly qualified physicians and psychologists who are also experts in Social Security disability evaluation . . . ." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 n.2 (3d Cir. 2007) (internal quotation marks omitted); *Harris*, 2009 WL 189845, at *13 (reviewing ALJ rejection of state agency medical consultant's opinion). "The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability."

Accordingly, in light of the foregoing, we are unable to conclude that substantial evidence supports the ALJ's RFC determination.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Horos was not disabled is not supported by substantial evidence. Accordingly, the Commissioner's decision denying her

- 16 -

application for disability insurance benefits and supplemental security

income will be reversed and the case will be remanded for further

proceedings consistent with this opinion.

An appropriate order follows.


Dated: March 31, 2023                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge